## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WINSTON WOODARD** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA'S DEPARTMENT** | : | |
| **OF CORRECTIONS, et al., VAUGHAN** | : | |
| **(C/O), J. SCHNECK (Hearing Examiner),** | : | |
| **M. WAHL (Deputy Centralize Services),** | : | |
| **K. EASON (Deputy Facility** | : | |
| **Management), J. APONTE (Major), M.** | : | |
| **LAMAS (Superintendent), J. DUPONT** | : | |
| **(Chief Hearing Examiner), LT. L. EASON** | : | |
| **(Security Captain) and** | : | |
| **DEPARTMENT OF CORRECTIONS** | : | **NO. 18-3191** |

## MEMORANDUM OPINION

**Savage, J.**                                                                    **October 17, 2018**

Plaintiff Winston Woodard, a prisoner at SCI-Phoenix proceeding *pro se*, filed this civil action pursuant to 42 U.S.C. § 1983 challenging discipline he received while he was incarcerated at SCI-Chester. His initial complaint was dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim because he sued only the "Commonwealth of Pennsylvania's Department of Corrections," which is not a "person" subject to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989); *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000). Because it appeared that Woodard might have sought to raise claims against individual defendants, he was given leave to file an amended complaint. Woodard did so.

Because Woodard has failed to state a claim upon which relief can be granted, we shall dismiss his amended complaint.

**FACTS**

Woodard alleges that a correctional officer at SCI Chester, identified as Vaughan, suggested that Woodard should "buy . . . a Liouie Bag" from him, which appears to be a reference to drugs.[1]  According to Woodard, after he refused the offer, Vaughan "invented a story claiming that [Woodard] attempted to have Vaughan bring drugs into the institution."[2]  He further alleges that L. Eason, the Security Captain, "interviewed C/O Vaughan and gave her authorization to write out the misconduct against [Woodard] solely based on her word with no evidence of any kind to support such serious accusations."[3]  Woodard alleges that L. Eason did not interview him and failed to look into the existence of any witnesses.

After a disciplinary hearing, J. Schneck, a hearing examiner, found Woodard guilty of the misconduct "based solely on unsupported allegations of C/O Vaughan."[4] Schneck also allegedly ignored a written statement submitted by a witness who alleged that he overheard Vaughan's discussion with Woodard.  Woodard appealed Schneck's decision.  M. Wahl, deputy of centralized services, K. Eason, deputy of facility management, and J. Aponte, major of the guards, denied his appeal.  Woodard appealed that decision to the Superintendent, M. Lamas, who "refused to consider the written statement . . . ."[5]  Woodard alleges that J. Dupont, the Chief Hearing Examiner, failed to consider the witness statement supporting Woodard's version of events.

The amended complaint names Vaughan, Schneck, Wahl, K. Eason, Aponte,

---

[1]  Am. Compl. at 2.
[2]  *Id.*
[3]  *Id.* at 3.
[4]  *Id.* at 2.
[5]  *Id.* at 2-3.

Lamas, Dupont, and L. Eason as defendants. He alleges that the defendants denied him a fair and impartial misconduct hearing in violation of his due process rights. Specifically, he complains they subjected him to discipline without considering the witness statement supporting his version of events and failing to call the witness during the disciplinary proceedings.

As a result of the misconduct charge, Woodard was placed in the Restricted Housing Unit. Woodard also alleges that the misconduct will be "used against him if and when he might go up for parole."[6] The amended complaint does not indicate how long Woodard spent in disciplinary confinement. However, according to his initial complaint, he was sentenced to ninety days as a result of the infraction.[7]

## STANDARD OF REVIEW

Although Woodard paid the filing fee in full, we have the authority to screen his amended complaint pursuant to 28 U.S.C. § 1915A. *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*). Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Neal v. Pa. Bd. of Probation & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the amended complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[6] *Id.* at 2.
[7] Compl., ¶ 10.

3

(2009) (quotations omitted). Conclusory allegations and generalized assertions are insufficient to state a claim. *Id.* Because Woodard is proceeding *pro se*, we construe his allegations liberally. *Higgs v. Att'y Gen*., 655 F.3d 333, 339 (3d Cir. 2011).

**DISCUSSION**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "[I]nmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest." *Burns v. PA Dep't of Corr*., 642 F.3d 163, 171 (3d Cir. 2011). "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest [for purpose of triggering due process protection]." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin v. Conner*, 515 U.S. 472, 486 (1995))). Here, Woodard was confined in restricted housing for ninety-days. That disciplinary sentence does not support "a due process violation because [it does] not rise to the level of an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Rhoades v. Adams*, 194 F. App'x 93, 94–95 (3d Cir. 2006) (per curiam) (quotations omitted); *Griffin v. Vaughan*, 112 F.3d 703, 708 (3d Cir. 1997) (holding that "exposure to the conditions of administrative custody for periods as long as 15 months falls within the expected parameters of the sentence imposed [. . .] by a court of law" and does not constitute a due process violation (quotation omitted)).

4

Woodard alleges the misconduct could "be used against him if and when he might go up for parole."[8]  The speculative nature of that allegation aside, it is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Moreover, the existence of a state parole system alone does not create a constitutionally protected interest.  *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987); *see Rodgers v. Parole Agent SCI-Frackville*, 916 F. Supp. 474, 476-77 (E.D. Pa. 1996) (noting that Pennsylvania's parole statute does not create a liberty interest in the right to be paroled).  Accordingly, Woodard's suggestion that his parole could be affected in the future does not support a due process claim.

Woodard cannot state a due process claim based solely on the filing of an allegedly false misconduct report.  *See Smith*, 293 F.3d at 653; *see also Banks v. Rozum*, 639 F. App'x 778, 782 (3d Cir. 2016) (per curiam) ("[N]o due process violation arose from the misconduct charge that Banks received after prison officials said he had tampered with his radio, even though Banks alleges that the charge was based on false information"); *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (per curiam) ("With respect to Seville's claim that his due process rights were violated, the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process.").  Nevertheless, Woodard was given a hearing to challenge and confront the charge.  He was entitled to nothing more by way of process.  *Smith*, 293 F.3d at 654 ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to

---

[8]  Am. Compl. at 2.

state a due process claim."); *see also Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (per curiam) ("Due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports.").  Therefore, Woodard has not stated a claim for a due process violation.

## CONCLUSION

Because Woodard has not stated a cognizable claim of a constitutional violation, we shall dismiss the amended complaint.  Woodard will not be given leave to file a second amended complaint because it does not appear that he can state a claim based on his disciplinary proceedings.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-13 (3d Cir. 2002).

/s/TIMOTHY J. SAVAGE